Case number 23465, Mindy Carpenter et al. v. Liberty Insurance Corporation, argument not to exceed 15 minutes per side. Mr. Karas, you may proceed for the appellants. Okay, let me see. Okay, may it please the court. The standard for proving bad faith in Ohio has been variously described as arbitrary, capricious, without reasonable justification, or that it's not fairly debated, the question is not fairly debatable about coverage. In this particular case, we believe that the trial court, quite uncharacteristically, failed to construe any of the facts in favor of the non-moving party, in this case the Carpenters. And secondly, again quite uncharacteristically, allowed the incompetent and inadmissible. And to take it to understand these standards as I just mentioned them, and I don't think there's any disagreement, there are various cases cited by all the parties in this case that use those standards, arbitrary, capricious, without reasonable justification, or that the question is not fairly debatable as a predicate for proving bad faith. But I think that one thing that has to be understood is context, and the factual context indeed. And in this particular case, we took the deposition of Ms. Huffstader-Smith, who is the SIU Special Investigations Unit Advocate for Denial of Coverage, actually. She was involved in this case for about three months, and when we took her deposition, she acknowledged that all of the people involved on behalf of Liberty Mutual knew, understood clearly, that they had the burden to prove the policy exclusion. And why is this important? Because when you look at the standard as far as context is concerned, just denying coverage, you may not have any burden at all to deny coverage if the insured simply hasn't met the burden of coverage for whatever reason, no insurable interest or what have you. But in this particular case, they, being Liberty Mutual, relied on an exclusion, and Ms. Huffstader-Smith acknowledged that Liberty Mutual, before it denied coverage, knew it had the burden to prove that exclusion. Let me ask, before we get into all of the merits, I have some concerns about whether this was an appropriate certification under Rule 54B. I know that, is it your office, Mr. Karras, that was closed for COVID? Yes, it is. And we're sorry and know that you would have an opportunity to respond. But tell us why this was properly certified. Well, Mr. Harder is an excellent writer. I will give him credit for that, and I would agree with him completely. Everything that he put in his supplemental memorandum, what he put in was about why it would be better for counsel and the attorneys to be, to not have to try this case twice, why it could be done, why it's appropriate to resolve this. It makes it easier if you go back down. But the real question, you know, under this kind of certification is whether, you know, whether the court below undertook the proper analysis to decide that initial issue. Are these distinct operative facts, or are they not part of the same operative facts? Well, Your Honor, going, I'm sorry if I didn't. Yeah, no, go ahead. Going back to the notion of whether there is a distinct or separate operative group of facts, this court was struggled with that in several contexts, typically involving unconstitutional statutes. And in those contexts, the court, in the Planned Parenthood versus DeWine and the Sebelius case, both of which I think were cited in Mr. Harder's brief, I know the DeWine case was. The notion that the separate claims may be derived from the same facts, I think that in those cases, this court backed off of that notion and took a look at whether these are distinct separate claims, period. And in fact, these are separate claims. The standard in Ohio for that. I'm sorry. I'm sorry. They said something. I didn't hear it. I'm sorry. They're distinct claims. It's a tort claim in Ohio for bad faith. Contract claim is the other claim that was subject to this case. Regrettably, there is going to be a factual overlap. And that is exactly why the interests of the parties are best served by having this court determine now the legal standards that are going to apply to  I'm going to go to the next part where you go through an analysis, whether there's just reason for delay. First, you have to have a final order on a separate claim. Yes. So, OK, I don't think there's any doubt that the order damages is not a final order on a separate claim. Do you agree with that? As a practical state, from a practical standpoint, I would have to disagree because I have to try the case and trying the case without being able to prove damages is pretty tough. But I think that the bad faith claim, there can't be any any doubt about that being a separate claim that has been determined with finality. OK, absolutely. All right. So a separate claim. My understanding is that under the case law, a separate claim does not mean a separate cause of action. You agree with that, that it's not enough, that it's a separate cause of action. I think I understand where the court's going. And to that extent, yes, I agree. Yes. OK, so then we look at the claim and I think what we look at is the operative facts. Do you The reason I do, Your Honor, and that's why I made mention of the DeWine case, the Planned Parenthood versus DeWine and other cases, because the the number of facts analysis was shown in the context of unconstitutional statutes to be unworkable. And we think it's unworkable in this particular matter, too, because it is without a doubt a separate claim, separate cause of action. However, the court wants to characterize it. The Ohio Supreme Court has absolutely unequivocally stated that claims for insurance, bad faith are distinct animal unto themselves, separate and apart from the contractual claim. Let me ask you a question. Are these cases for breach of contract and for bad faith? And what's to distinguish this from the run of the mill kind of case for insurance recovery? I, from a factual standpoint, Your Honor, I'm sorry, I didn't understand your question. I mean, if if you say that we should consider it under Rule 54B, what's the difference between this case and all the other fire insurance cases in which somebody says that the insurance suggester had bad faith or the company had bad faith? Because there are loads of those, right? Well, yes, sir. But I think they're all fact sensitive. And if there's anything that's been demonstrated by the cases that all the parties have cited is that each one of these cases is fact sensitive. And if I may get to the merits a little bit here in this particular instance, the lead investigator acknowledged that Liberty had the burden to prove its exclusion. That's important because they are now in the position of having a burden of proof. And if they can't meet their burden of proof, no way, no how, then they have to have they have to have committed bad faith. If knowing going in before you deny, you can't prove it, then you and trial for the district court. Right. I didn't hear the first part, Your Honor. Then it goes to a question of summary judgment or trial for the district court. Right. Yes, sir. And that's typical of any of these cases. Right. Well, ultimately, all these cases go either to summary judgment or to trial. Yes, I've tried them for years as a district judge, and I knew, but we never certified one of the issues like this. Your Honor, I think that the certification meets all of the standards of Judge Rose, who is the judge in the box, if you will. I think he made a proper certification. All the parties agree in this particular case that if we are going to go to trial, that we're going to be back again. We're going to have we're going to have a couple of appeals in this case if we can't just resolve the issues that are now pending before this court one time. I think that Mr. Counsel, if you if you're so concerned about that, it would seem to me that you try the case because basically the same nucleus of facts that that goes to contractual liability is the same facts that are going to show whether they were reasonable in denying it. Oh, I'm sorry. Okay. But if you're so concerned about it, why don't you just you get a you know, you use a specific verdict form and you ask whether there's bad faith and you see whether there's damages. And then at the end, the judge just again, strikes that count, removes those damages and you appeal the whole case. I'm out of time, Your Honor. I'd love to respond. Go ahead. Okay. It won't work that way, Your Honor, because we'll never get to that point. Based on the status of the case as it is now before this court, we won't hear the issues of bad faith, won't hear any of the factual issues, won't hear any of the legal issues, won't have any jury instructions with respect to the separate cause of action under tort for insurance, bad faith. And we will be going to trial on the contractual issues without a without being able to introduce from our damages that we anticipate offering. So we are dead set certain to have a second round with you all on an appeal. I mean, I wish we could avoid it. But in the meantime, my clients and Mr. Harder's clients have to incur the time, effort and delay and expense. And my clients would be horribly prejudiced. They've already been horribly prejudiced by being dispossessed of their home. Now to be they have to go through a trial and the expense of a trial only to come back to you again in another year. Well, I was saying that if if both of you are so concerned about this, that you want the appeal to be heard now, the way to deal with it is to just agree to do what I suggested. And I'm sorry, your court would have any objection, Your Honor, if I Yeah. There's no practical way we can do it because the court cannot permit evidence on an issue that's no longer before it. Well, the trial court can't. The bad faith claim is gone that we get that we get to offer nothing with respect to the separate tort of bad faith. And then with respect to the damages, the damages, we have no consequential damages are permitted at So we go to trial. I mean, we might as well move for summary judgment. We could probably end up back here again. But but the fact of the matter is those two issues preclude any efficient handling on a one time basis. At the trial court level. OK. OK. You still have your. My mind says I have no time left. Yes. I'm saying that you still have your rebuttal after Mr Harder response. Thank you, Your Honor. Mr Harder may proceed. Thank you. Good afternoon, Your Honors. Bill Harder for the defendant appellee, Liberty Insurance Corporation. I will address the 54B issue first since it's obviously the threshold issue for the court. This is obviously an abuse of discretion question and precedent from this court, including the corrosion hearing decision, say that where the district court considers the corrosion hearing factors, a deference should be given to it. The district court in this case did consider those factors. When you look at the decisions from the court record entries, 88 and 90. The court added several pages in its amended entry when it certified this case. The court identified the six specific corrosion hearing factors. The court specifically indicated that it weighed those factors and considered those criteria. This is not simply a situation where in a one sentence tack on. Bless you. In a one sentence tack on the court has added 54B language or or added no just reason for delay. The consideration and decision to certify this is a reasoned one in this case, and I would submit it is consistent with decisions from this court. I would specifically refer the court to Smith versus Allstate, which is a case where the insureds sued for breach of contract and the insurer counterclaimed. The court ruled in favor of the insurance company on the insureds claim. While the counterclaim was still pending, that case was taken up and a decision was issued. That is, in fact, a residential fire insurance claim. I would also refer the court to Pure Tech versus Mount Holly. Could you answer the question? What was the second issue in this in the case you're citing with Smith against Allstate? The insureds sued for breach of contract and the insurance company filed a counterclaim to recoup payments made during the pendency of the claim prior to the denial. So the the breach of contract case was taken up on summary judgment while the counterclaim to recoup payments advanced was unresolved in the district court. This court had no qualms about taking that case up and affirming the propriety of the summary judgment decision, even though the counterclaim still had to be pursued thereafter. Did it discuss Rule 54? It did not. There is no substantive discussion of 54B at all, other than that it was obviously a certified appeal under Rule 54B because the counterclaims were still pending. But there was no decision involving Rule 54B? There was not what I would call a substantive analysis undertaken by this court of Rule 54B, no. I would submit that the court, to the extent it needed to, gave deference to the trial court and allowed the appeal. Similarly, I would refer the court to this court's decision in Pure Tech v. Mount Holly Insurance, which is also in Liberty's supplemental brief, where the insured sued for breach of contract and bad faith. The court granted summary judgment on breach of contract for the insurance company, but again allowed that case to go up right away on a 54B appeal, even though the insured's bad faith claim was still pending. What's to distinguish this case from all these run-of-the-mill sort of cases that the insured sues your client and then asks for a bad faith? What's to keep the court from just obviously, and the district court recognized that 54B certifications should not be entered in too lightly. What I would point out to the court in this particular case is the vast majority of the carpenter's claim is the bad faith claim, at least from their claimed damages. Their briefs bear that out when they talk about the emotion of the claim and the emotion of the denial and the unrest on their lives. So I don't think from a set of proposed damages that you can fairly describe this as run-of-the-mill. The other thing I would point out to I believe Judge Strange's question in terms of whether or not there's really a separate set of facts, I think there is. And what's most important to recognize about that is on a breach of contract case, the insurance company will not testify at all. There's no reason for an adjuster to take the stand. There's no reason for a corporate rep to come in and testify as to why a claim was denied with any substance because the issue is... We lost the feed. Are you still there? I am. Yes. We lost you. I'm sorry. Can you hear me again? Yes. I'm not sure where you lost me, but I was saying that the... No need for any representative of the defendant to testify, but you would. You'd have to present evidence as to why you believe it was arson. But that doesn't involve the insurance company's representative testifying. That involves a fire marshal or that involves a fire investigator. That does not involve us putting on a claims adjuster. In fact, I would submit that if this is only a breach of contract case, unless there's a dispute about the policy... Due to a technical issue, this section of audio was not captured. ...at the trial level. I would also like to say, I don't believe that the damages issue presents a 54B problem either because the damages issue in this case... We've lost him again. Can you stop the clock, please? I can hear you. It's just the video froze, if you all can still hear me. Yes. Very good. The damages issue in this case is two sides of the same coin. The court has ruled that these are not recoverable breach of contract damages, but the court also says these are only recoverable bad faith damages. When there is no bad faith viable claim, these damages then fall away. And does Liberty concede that you can get emotional distress damages in a bad faith denial claim? Emotional distress damages are recoverable under a bad faith verdict. Yes. The Zoppo case makes that clear. That is the avenue for the carpenters to recover bad faith damages. Well, doesn't your opposing counsel disagree with that? Doesn't he think that there is an independent right under breach of contract to put those items into evidence? He does, and I would submit that he is wrong. There is no general breach of contract rule that allows a plaintiff in Ohio to recover emotional distress damages. That is borne out by the fact that the Kish-Martin case that he cites is an exception to the general rule. If the general rule allowed emotional distress damages, you wouldn't have the Supreme Court worrying about opening the floodgates by letting them in in residential contract cases, as Kish-Martin does. The ability to recover emotional distress damages strictly under breach of contract in Ohio is limited to residential real estate contracts, funeral homes, and a stalking settlement agreement. That is it. If Hadley v. Baxendale was going to be the law of Ohio, surely it would have been cited in the last 250 years to allow this in an insurance setting. I see that I am almost out of time. I would like to point the court to the Smith v. Allstate decision and the Thomas v. Allstate decision, both of which confirm that the question before the court is not, is this denial correct? The question before the court is, is this denial reasonable? The correctness of this denial is for the jury to decide at trial. The reasonableness of this decision is for the jury to confirm that decision by affirming the summary judgment that was entered for liberty on the bad faith claim and on the damages that can only flow from the bad faith claim. I'm happy to answer other questions, but otherwise appreciate the time. Does anybody have any questions? Okay, thank you. We'll go back to rebuttal, Mr. Garris. Thank you. With respect to the damages on contract, there's been a misstatement of the damages under Ohio law. We're not relying solely on Hadley v. Baxendale. We have cited a number of Supreme Court cases that provide for consequential damage as a matter of course for breach of contract. That all notwithstanding, the real issue here is, was there reasonable conduct on behalf of the insurance company denying coverage? There was no, absolutely no, evidence of motive that the district court properly considered. I defy anyone to suggest, I'm sorry, your honor, go ahead. Ask you a question. Yes, sir. The best case, Mr. Harder's given us a couple his best case as to why we should accept this certification, and what's your best case? Are relying upon his, or you got some better? Your honor, the cases are what they are. The corrosion hearing case, I think, is the standard of this court, and I think that the appeal meets every single one of the criteria under corrosion hearing. I don't know how else to say it, but I'd like to address the merits because there cannot be any good faith decision to deny coverage in the absence of motive evidence, and in this case, it is absolutely uncontroverted that the only thing that the plaintiffs could have gotten as a result of their insurance claim would have been their home restored. Why? Why remodel a home just before a fire, have no mortgage, none whatsoever, have everything? Why go to the time and trouble of a beautiful remodeling job, which is a quote from the adjuster that was on site, only to torch the house to have it repaired? That provides no motive, cannot provide motive, and the brief of Liberty Mutual is bereft of any suggestion of motive. There are absolute disincentives. I asked Ms. Huffstader-Smith, would you, with two disabled kids, when you just remodeled the home to accommodate their specific needs, what is there to gain by torching the home only to have it repaired? I can't answer that was her response. She has to answer that to have a good faith denial. She couldn't, multiple times. I submit the court to Huffstader-Smith's deposition, please, pages 129 through 137. If that is not a walking, talking illustration of insurance bad faith, we'll go away. Yes, your honor. You're arguing the merits of your breach of contract case. You put all that in and you win it, then you can take an appeal on the bad faith, right? I'm sorry, your honor. That was bad faith. That is not breach of contract. Well, motive is an element of both because they have to prove. See, in this particular case, what's throwing the apple cart upside down is that in this particular case, on the contract issue, the defense, Liberty Mutual has the burden to prove its exclusion. Without the exclusion, we have coverage as we sit here today. But you're arguing that they didn't have any grounds for it. Absolutely none. None. Absolutely none. Counsel, in this particular case under Ohio law, can you lose on the contract claim and still I would accept exactly what Bill said. There is case law to that effect. The Spadafore case, for example, there were, I'm trying to remember, Ballard, I think is the one case we cited where there was a delay for an insurance company honoring a claim for MedPay. And in the intervening time, MedPay, this is under an auto policy, but the MedPay became a moot issue. But the court still held that there was a claim existing for bad faith for the insurance company's lack of reasonable basis to delay. OK, but that's not this case. There's no claim that their delay defeated your contract rights. Your Honor, we can't try the contract case as it's presently constituted because the court has essentially taken away all the damages. Bill, I mean, Mr. Harder is absolutely correct. We try this case on contract even if even if the court finds that there is or the jury finds that there's a breach of contract. That issue isn't even done because we have no damages, because the court has misapplied Ohio law on damages. Wait, you're saying they paid? They paid under the under the insurance contract? No, Your Honor, I didn't say that. Then what are you asking me about the authority? I'm sorry, I'm out of time. I'm sorry, counsel. I'm not following you. If you win the breach of contract case, then you get paid under the policy. Why do you say there's no damages? Because we have been denied any. The court has denied us any incidental or consequential damages. For example, the rents paid by my clients, the moving expenses, the harassment that they had to go through multiple times to move with two disabled kids, living in an 800 square foot apartment with multiple moves, serial moves, and the hardship that the family has suffered, the expenses. We're not allowed to claim any of that as the court's ruling presently stands because the court misapplied Ohio law and said they were only entitled to the policy limits. Policy limits are if we had, if Liberty had honored the claim, we would be entitled to compensation up to the policy limits. But denying the claim, we have consequential damages and the court is preventing us from recovering those. Okay. Aren't those damages the policy limits? What is the policy limit? I can't even remember the policy limit, Your Honor, but the policy limit is what is owed by the company if it honors coverage. To repair or replace the home, they have to repair or replace the home within that amount. Well, there was no question about that. What happened was in denying coverage, now my clients have incurred consequential damages. I understand what you're saying, but you said there's no question about that. There's no question about what? They didn't pay it, right? Correct. But it's not a question of whether this was an excess of policy limit. I'm sorry. There is a question whether they owe it, right? Absolutely. Okay. So why do you say there's no damages to be collected? Because the court's decision, the decisions that we are appealing prevent plaintiffs from offering any evidence of consequential damages under settled Ohio contract law. I understand that, but there's still the amount of the policy, right? Only for repair. That's it. For nothing else. Okay. And there's nothing in the policy that provides that when your house is destroyed, they pay for reasonable rental expenses? Only if there's coverage. They have denied that because there's no coverage. Obviously, that's why you have a lawsuit. I'm sorry. We would be well beyond those limits. Counsel, I'm sorry. Are you saying that the court determined that all you can get is the repair and that even if you show that they were liable under the policy, the court determined that as a matter of contract law, you are not entitled to compensation for reasonable rental expense? Absolutely. The way the decision stands right now. Absolutely. Absolutely. Because what the court did was said, you're entitled to the single limit for repair and replacement. That's it. Does your contract provide for rental expense? At this point, we would be well beyond the ALA coverage. Okay. That's what that coverage is, is ALE coverage, and we would not be able to counsel. We thank you both. The case will be submitted.